# COOPER *v.* OLCOTT.

STATUTE OF LIMITATIONS ; ACKNOWLEDGMENT AND NEW PROMISE ;
PARTNERSHIP.

1. There can be no better evidence of a subsisting indebtedness with
the indication of willingness to pay it, which constitutes a new
promise sufficient to avoid the bar of the statute of limitations,
than payment of money by the debtor on account of the indebt-
edness.

2. A promise to pay an indebtedness at any time the creditor should
need it, even if the debtor had to sell stock to do it, is not a con-
ditional promise to pay, but is an acknowledgment and new
promise, sufficient to avoid the bar of the statute of limitations.

3. One partner, during the existence of a partnership, entered into an
agreement with a third party, without the knowledge of his co-
partner, to lease the property in which the partnership business
was conducted. The transaction was discovered by the second
partner, who notified the other of his conditional acceptance of
the proposed arrangement, but reserved the right to repudiate
it ; whereupon, the agreement was surrendered by the partner
making it : *Held*, That the advantages sought or gained by the
first partner in his secret negotiations for the lease, were too
vague and indefinite to form the basis of compensation to his
co-partner in a partnership accounting.

No. 14.   Submitted May 25, 1893.—Decided September 5, 1893.

HEARING on cross-appeals from orders of the Supreme
Court of the District of Columbia, holding an equity term,
overruling exceptions to findings of the auditor.   *Affirmed.*

STATEMENT of the case by Mr. Justice MORRIS :

This is a suit instituted for the dissolution of a partnership,
the administration of the partnership assets, and the settle-
ment of the partnership accounts.

Some time prior to April 1, 1884, the complainant Cooper
and one John B. Olcott, whose interest was afterward trans-
ferred to the defendant, W. Harry Olcott, entered into a part-
nership for the transaction of a general livery business, that
is, the buying, selling, boarding and hiring of horses.   It
was specified that the partnership should continue for two
years from the date mentioned.   After the lapse of these two

years, the business was continued without express renewal and without reference to any further specification of time.

In 1885 the firm had become financially embarrassed, and the embarrassment continued in 1886. In March, 1886, Olcott, who had overdrawn his account with the firm to the amount of about $1,100, borrowed, with the knowledge and consent of his partner, the sum of $1,195 from Charles J. Hedrick, his brother-in-law, in four different amounts, and gave him the four several promissory notes of the firm therefor—one dated March 2, 1886, for $750, payable 27 days after date; the second dated March 6, 1886, for $265; the third dated March 9, 1886, for $25; and the fourth dated March 17, 1886, for $155. These three notes were all made payable on demand after date, and bore no interest. It is conceded that the money for which these notes were given went into the business of the firm. And it is also conceded that it was never repaid, except to the extent of a credit of a bill for $21, presented by the firm to Hedrick about October 1, 1886, and which they asked him to credit upon their indebtedness to him.

The stable property in which the business of the partnership was conducted belonged to George H. Plant, to whom, it seems, the firm also became indebted, and who appears in the suit as a creditor. An improvement or enlargement of the premises was desired by the firm. Plant appears to have been unwilling or unable to make the desired improvements, and the partners sought to procure a transfer of the property to some owner who would make the improvement. After some ineffectual efforts in this direction, the complainant Cooper, without the knowledge, it is alleged, of his partner, procured the purchase of the property from Plant by Mrs. Mary Louisa Norton, under an arrangement between Cooper and Mrs. Norton, by which the former was to have a lease of the premises for 15 years at a rental of 7 per centum per annum upon the amount that she should have to pay Plant and the cost of the new stable that was to be built upon the premises. The arrangement also provided for the pay-

ment of all taxes and of all necessary repairs upon the property by Cooper. This arrangement took formal shape in a letter from Cooper to Mrs. Norton, under date of May 29, 1888, in which he stated to her the proposition which it seems he had before that verbally made to her agent. It is inferred from this letter that at that time the purchase by Mrs. Norton from Plant had not been consummated, and that the proposition was made as an inducement to her to make the purchase. It does not appear from the record before us when this purchase was actually made. Under date of June 7, 1888, Mrs. Norton communicated in writing to Cooper her assent to the proposition, and her agreement to give him the proposed lease.

Olcott, in some way, discovered the pendency of these negotiations, and on June 11, 1888, Cooper, when called to account, admitted what had been done. Thereupon, Olcott immediately addressed a communication to him, in which, claiming that the agreement between Cooper and Mrs. Norton should be for the benefit of the firm, he assumed to give his consent to it, with the proviso that the building to be erected should not cost more than $7,000, should be adapted to the business, and in real value should approximate the actual cost. And he notified Cooper that if the latter undertook to proceed without consultation with him (Olcott), or without his express consent, he reserved the right either to repudiate his partner's action or to accept it for the benefit of the firm.

Cooper states that, upon the receipt of this communication from Olcott, and being advised, as he says, that his action was illegal, he returned Mrs. Norton's letter to her, and surrendered his agreement.

About a month afterwards, on July 14, 1888, the dissension between the partners having continued and increased, Cooper filed the bill in this case, from which, besides the facts stated, it appears that notice had been given to the firm to quit the premises on or before July 25, 1888. The assets of the firm were stated in the bill to be about $4,500, and its indebted-

ness, which included the claim to Hedrick, to be about $2,500.

Olcott, in his answer, resisted the dissolution of partnership prayed for by the complainant; claimed that he did not come into court with clean hands; and claimed also that, notwithstanding his apparent surrender of his agreement with Mrs. Norton, there was still a subsisting understanding between them to the detriment of the firm.

Receivers were appointed, and the effects of the partnership, including the good will, were sold by them for the gross sum of $1,344.75. Reference was had to the Auditor to state an account of distribution of this fund, and also an account between the partners. On June 5, 1889, Hedrick presented before the Auditor the claim against the firm which has already been mentioned. Plant and other creditors also filed claims. Cooper, together with Plant and others, pleaded the Statute of Limitations to Hedrick's claim; and Hedrick sought to avoid the bar of the statute by showing repeated acknowledgments, amounting to a new promise, within the statutory period of limitation. The Auditor found that there were such acknowledgments, and sustained and allowed his claim. To this allowance exception was taken, but the Equity Court overruled the exception, and sustained the Auditor; and one of the appeals here is taken to reverse this action of the Equity Court.

In the statement of account between the partners themselves the defendant Olcott asked the Auditor to charge Cooper with the sum of $8,000, which he (Olcott) estimated as the loss to the firm from the alleged misconduct of Cooper in connection with the transaction with Mrs. Norton. This the Auditor refused to charge. Upon exception the Auditor was also sustained by the Equity Court in this ruling, and Olcott appeals from this decision.

Olcott also claimed that the costs of suit should be paid by Cooper, and not charged against the fund in the hands of the receivers. This the Auditor refused, and this refusal was sustained by the Equity Court. And from that action also Olcott appeals.

*Mr. Chapin Brown* for complainant:

1. The claim or claims of Hedrick were all barred by the statute of limitations *before* they became a part of this suit by their presentation to, and filing with the Auditor.

2. The testimony does not show a sufficient new promise to avoid the bar of the statute. The law requires that a new promise must be explicit and certain, and if accompanied with a condition, must show that that condition has been fulfilled. *Bell* v. *Morrison*, 1 Peters, 351.

The testimony is that the members of the firm had conversations with Hedrick in which they recognized the indebtedness and promised to pay it, "whenever he, Hedrick, *should need it*, even if they had to sell the stock to do it." There is no testimony showing that Hedrick ever needed it, or that he ever notified them that he needed it, or that any stock was ever sold to make this payment. The condition accompanying this promise having never been fulfilled, the promise is not sufficient to defeat the statute of limitations.

3. The statement in the bill, that the partnership was indebted in the gross sum of $2,500 not specifying or mentioning any claims, was no recognition of this debt or any other, and was not made to Hedrick or his agent, and was not made with a view of renewing or continuing this debt, or any other debt. The indebtedness of the firm at that time was a legal obligation of the firm for which, at that time, Hedrick could have obtained a judgment at law against the firm. Any admission on the complainant's part at that time of the firm's legal obligation could not be construed into a new promise to pay this indebtedness. But at that time it may be admitted that the claim was a legal obligation of the firm, but such fact even if stated in a bill in equity, cannot have the effect of a new promise to pay to Hedrick. A new promise has to be made to the party, or to some one representing him.

Some courts have gone so far as to hold that a new promise made *before* the statute has expired is not sufficient to revive the debt on which to base a new cause of action. And while this may not be the law of this District, yet the

reasons given in the opinions of the courts in these cases are of great weight in determining the proper effect to be given to testimony tending to overcome the plea of the statute of limitations. *Morgan's Adm'rs* v. *Walton*, 4 Barr. (Penna.), p. 321; *Magee* v. *Magee*, 10th Watts, 172; *Gilkyson* v. *Larue*, 6 Watts & Serg., 217; *Case* v. *Cushman*, 1 Barr (Penna.), 241; *Farley* v. *Kustenbader*, 3 Barr (Penna.), 418; *Forney* v. *Benedict*, 5 Barr (Penna.), 225.

5. The claim must be exhibited or identified beyond all doubt. In this case there were several notes, and they are referred to simply as indebtedness. *Walker Exr.* v. *Griggs*, 32 Ga., 119; *Martin* v. *Broach*, 6 Ga., 21; *Sedgewick* v. *Gerding*, 55 Ga., 264; *Miller* v. *Baschore*, 2 Norris (Pa.), 356; *Hobaugh* v. *Murphy*, 5 Cut., 477; *Weaver* v. *W.*, 4 P. F. S., 152. An offer to sell property to pay is not sufficient unless it is shown that debtor sold it for this purpose. *Gerherd* v. *G.*, 3 Cent., 601.

*Mr. C. J. Hedrick* for the defendant:

1. Partners are mutual trustees as well as mutual agents. Story on Partnership, Sec. 169, Lindley, Vol. 1, pages 443 et seq.; *Kilbourn* v. *Latta*, 5 Mackey, 304. And clandestine negotiations by one partner with reference to the partnership premises are in the nature of breaches of trust and fraudulent. *Featherstonhaugh* v. *Fenwick*, 17 Ves., 311. The complainant should be charged in any account between the parties with the value of the contract which the complainant negotiated in his own name with Mrs. Norton. Such contract was a legal contract enforceable in the courts; so that had complainant retained the contract Mrs. Norton would have been forced to give a lease of which this court could have given the benefit to the firm or the firm's successor. That contracts which a partner fraudulently obtains in his own name are assets of the firm is abundantly established. *Ambler* v. *Bolton*, L. R., 14 Equity, 426; *Smith* v. *Mules*, 9 Hare, 556; *Pearce* v. *Ham*, 113 U. S., 585.

2. The firm creditors and not the costs of suit should have priority in distributing the funds in court. The court below first deducted costs of suit and decreed distribution of the balance to creditors. This was error, because, for one reason, creditors' claims are prior in time, and, for another reason, because creditors have no control over the expenses of litigation. 13 L. R. Ch. D., 845, wherein *Austin* v. *Jackson,* 11 L. R. Ch. D., 942, giving priority to creditors, is approved and followed.

3. No decree should be made against either partner until partnership debts are paid or the claim of the partner is abated by an amount equal to his share of the outstanding indebtedness. *Tyng* v. *Thayer,* 8 Allen, Mass., 391.

*Mr. L. C. Wood* for the claiming creditor, Hedrick:

1. The complainant's statements to the creditor (Hedrick) were a sufficient new promise for the firm.

2. The defendant's promises to the creditor, Hedrick, bound the firm and were a sufficient new promise for the firm.

3. The firm composed of defendant and complainant recognized the notes as late as October 21, 1886, by asking the holder to credit the said notes with a bill of $21 for services, which credit moreover appears on the books of the firm.

4. The object of the statute of limitations in this District is to prevent the resurrection of stale claims. The pleadings in this cause and all the testimony in regard to the claim show that the indebtedness represented by said notes has always been regarded as a live matter and was the subject of repeated recognition within three years by both members of the firm, although a recognition by either member would bind the firm. As to the new promises being within three years of the dates of the notes "the rule generally adopted and the only tenable one is that it is immaterial whether the acknowledgment precedes or follows the bar." Wood on Limitations, p. 200, sec. 81.

Mr. Justice MORRIS delivered the opinion of the Court:

Three questions are presented here: 1st. Whether the claim of Hedrick is barred by the Statute of Limitations. 2d. Whether the defendant Olcott was entitled, as against his partner, Cooper, to some allowance for the alleged fraudulent transactions of the latter in the matter of the negotiations with Mrs. Norton; and, 3d. Whether the costs of suit should not be charged against Cooper. We take them up in the order stated.

1. As to the claim of Hedrick on his notes, it seems to us that the Auditor was fully justified in finding acknowledgments of the indebtedness sufficient to take the claim out of the operation of the statute of limitations. Apart from the testimony of Olcott, and his unequivocal and repeated acknowledgments of the indebtedness during the year 1888, within the period of limitations, there is positive and uncontroverted proof of the payment of $21, or rather of the allowance of a credit to that amount, by the partnership to Hedrick about October 1, 1888. Now, there can be no better evidence of a subsisting indebtedness, with the indication of willingness to pay it, which under all the authorities constitutes a new promise sufficient to avoid the bar of the statute, than the payment of money on account of the indebtedness. Citation of adjudged cases in support of this proposition is entirely unnecessary.

But it is argued that no specific indebtedness was mentioned or indicated, and that therefore the reference to it was too vague to constitute the foundation of a new promise. There was but one indebtedness. That one indebtedness was specifically and positively ascertained, and reduced into the shape of promissory notes. It was not necessary under such circumstances to specify amounts; for it is a maxim of law, applicable to such a condition of things, that "that is certain which can be rendered certain."

It was testified by Olcott, that in a conversation with Hedrick in the year 1888, he (Olcott), with the advice and

consent of Cooper, promised to pay to Hedrick on behalf of the firm the money due to him at any time that he should need it, even if they should have to sell stock to do it. And it is argued that this shows only a conditional promise, and that it does not appear that the condition has been performed. For it does not appear either that Hedrick has needed the money, or that stock has been sold to pay it. This is a mere trifling with words, that should have no place in a court of equity. The word "*need*" here is evidently used in the sense of "*request*"; and the sale of stock to meet the demand was no condition at all. Olcott was competent to make the acknowledgment which he did while the firm was yet in existence, and to bind the partnership by his promise; and that promise was unconditional and unequivocal. The firm is bound by that promise, and the objecting creditors are equally bound by it—although it is undoubtedly their right to show, if they can, that the debt is barred. The right of a creditor in this regard is no greater than the right of the debtor.

We are of opinion that the decision of the Auditor and of the Equity Court on this point was correct.

2. The second question for our consideration is, whether the defendant Olcott was entitled as against his partner to have the latter charged with the alleged value of the losses to the firm through the fraudulent transactions of Cooper in the matter of his negotiations with Mrs. Norton.

It is very evident that the partners did not behave towards each other with the best faith in the world; and the record plainly discloses the fact that the complainant Cooper sought to gain some undue advantages for himself. But the advantages sought or gained by him in this case were too vague and indefinite to be the basis of compensation to his co-partner. His arrangement with Mrs. Norton was not a lease, but at best only an agreement to lease—a right, and not an estate—a right with reference to property, part of which as yet had no existence; a right which might never actually be consummated in a lease. But whatever it was,

Olcott, when he had the opportunity, and it was his duty so to do, did not assert his right, or the right of the firm, to it in such manner as to fix liability upon his partner. He made his acceptance of the arrangement conditional upon a specific limitation upon the cost of the building to be erected, and conditional also upon the adaptation of that building to the use of the partnership business. And he also imposed a further condition in the reservation of the right to accept or repudiate the arrangement, in the event that Cooper should proceed in the matter without consultation with him. Whatever wrong Cooper may have committed in conducting his secret negotiations, it became the duty of Olcott, when he discovered the arrangement, either to accept it or to disavow it unconditionally. And if, after receiving from Olcott the letter of June 11, 1888, Cooper surrendered his agreement with Mrs. Norton, as he claims to have done, it was no more than good faith required him to do under the circumstances. If by his negotiations he had done wrong to his firm, his surrender of the fruits of the negotiations, upon the disapproval of his partner, might perhaps properly be regarded as a praiseworthy attempt to repair the alleged wrong, rather than as an additional injury which it is claimed to be. We can discover no consistency in the defendant's position that the complainant's negotiations were wrong, and yet that his withdrawal from the negotiations and the surrender of the fruits of them were equally wrong.

We think the decision of the Equity Court on this point also was correct.

With reference to the third point, the question of costs, it is sufficient for us to say that no such case has been made as would justify the charge of costs to be made against the complainant individually rather than from the assets in the hands of the receivers.

On the whole, we regard the decree of the Equity Court as right upon every point; and it is therefore affirmed, with costs.

*Affirmed.*

Since the rendition of this opinion, our attention has been called, by a motion of Charles J. Hedrick, one of the appellees in the cause, to his claim to be allowed damages for the appeal by way of interest on the amount allowed to him by the Auditor. This claim is just, and in accordance with law, and Hedrick will be allowed such interest from the date of the appeal.